**Rodney NEELEY, Individually and on Behalf of All Others Similarly Situated, Plaintiff,**

v.

**PORTFOLIO RECOVERY ASSOCIATES, LLC, Defendant.**

**1:15–cv–01283–RLY–MJD**

United States District Court, S.D. Indiana, Indianapolis Division.

Signed 08/02/2017

Angie K. Robertson, Mary E. Philipps, David J. Philipps, Philipps and Philipps, Ltd., Palos Hills, IL, John Thomas Steinkamp, John T. Steinkamp and Associates, Indianapolis, IN, for Plaintiff.

David M. Schultz, Jennifer Wigington Weller, Hinshaw & Culbertson, Chicago, IL, for Defendant.

## ENTRY ON PLAINTIFF'S FIFTH AMENDED MOTION FOR CLASS CERTIFICATION

RICHARD L. YOUNG, United States District Judge

Defendant, Portfolio Recovery Associates, LLC ("PRA"), attempted to collect a time-barred debt from Plaintiff, Rodney Neeley, by sending him three form collection letters in late 2014 and early 2015. Neeley claims that PRA ran afoul of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, because these letters contain a misleading statement. He now moves for class certification in hopes of recovering damages on behalf of a class of approximately 2,500 people. PRA maintains that this case should not proceed as a class action, primarily because Neeley lacks Article III standing. The court disagrees, and therefore **GRANTS** Neeley's motion.

### I. Background

PRA sent Neeley form debt collection letters, dated August 14, 2014, November 12, 2014, and February 17, 2015. (Filing No. 95–1, Letters). Each letter provides, "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." (*Id.*). This language was discussed at length during Neeley's deposition:

Q: What does that mean? [referring to the disclaimer quoted above]

A: Pretty much the debt is old and pretty much saying they can't sue me.

. . .

Q: Is there any language on this [August 14] letter that you claim as confusing?

A: No.

Q: Is there any language on this [August 14] letter that you claim is misleading?

A: Well that whole line there is—"Because of the age of your debt, we will not sue you . . . ." Why do they keep sending me letters? Kind of makes it a little weird. I mean, if the debt is so old, why do I keep getting letters?

. . .

Q: Was there any language on this [November 12] letter that you claim is confusing?

A: No.

Q: Is there any language on this [November 12] letter that you claim is misleading?

A: Okay. I would claim, maybe, that the "Because of the age of your debt, we will not sue . . . ." Why are they still sending that? Is that a little misleading? Or maybe that is just me?

Q: So you're saying it's misleading because the debt is old?

A: And they got that disclosure right there at the bottom.

Q: Is it your contention that because the debt is old no one can collect it?

A: That is the law, right?

. . .

Q: And is there anything on this [February 17] letter that you claim is confusing?

A: Well, we can go back to the same thing, the little disclosure here.

Q: What's the disclosure that you're referring to?

A: "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency."

Q: What do you think that means?

A: Well, I'm assuming it means that it's so old they can't collect the debt, but yet they're still sending me letters with all kinds of numbers on them.

(Filing Nos. 96–1 and 101–1, Deposition of Rodney Neeley 36:18–42:2).

## II. Legal Standard

■ "A court may certify a plaintiff class when the named plaintiff demonstrates that the proposed class meets the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one of the branches of Rule 23(b)." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 858–59 (7th Cir. 2017). Here, Neeley seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III. Discussion

PRA opposes class certification for three reasons: (1) Neeley lacks standing, (2) Neeley is not an adequate class representative, and (3) the predominance element is not met. The court addresses each argument in turn.

■ PRA first argues that Neeley does not have standing to pursue this case at all, much less as a class action. Standing "is a short-hand term for the right to seek judicial relief for an alleged injury." *Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *Susan B. Anthony List v. Driehaus*, —— U.S. ——, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014)). "To have standing, a plaintiff must allege and ultimately show: (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

Here, PRA maintains Neeley cannot show that he has suffered an "injury in fact." It cites to the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, where the Court concluded, "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." —— U.S. ——, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016). PRA then highlights testimony from Neeley's deposition in an effort to show that he (a) demonstrated an informed understanding of the letters, (b) admitted that he did not find them confusing, (c) never made a payment to PRA because of the letters, and (d) did not experience any emotional distress. According to PRA, Neeley's own testimony proves that he has, at most, a bare procedural violation.

The court disagrees. Initially, "numerous other courts, including courts in this circuit and from around the country, have rejected *Spokeo*-based standing challenges in the context of FDCPA violations." *Po-*

*gorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 WL 2539782, at *4, 2017 U.S. Dist. LEXIS 89678, at *11 (E.D. Wis. June 12, 2017) (collecting cases). *See Saenz v. Buckeye Check Cashing*, No. 16 CV 6052, 2016 WL 5080747, at *2, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.").

■ Moreover, the Seventh Circuit has made clear that FDCPA claims must be evaluated using the "unsophisticated consumer" standard. *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686 (7th Cir. 2017). This is an objective test, so "it is unimportant whether the individual that actually received a violative letter was misled or deceived." *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012). The court is not convinced that Neeley's subjective understanding of the letters matters for purposes of standing post-*Spokeo*. Nevertheless, Neeley's deposition testimony, taken as a whole, demonstrates that he actually did find the letters confusing, even if he did not want to admit it. (*See e.g.*, Neeley Dep. 37:9–12 ("Why do they keep sending me letters? Kind of makes it a little weird. I mean, if the debt is so old, why do I keep getting letters?"); 41:24–42:2 ("Well, I'm assuming [the disclaimer] means that it's so old they can't collect the debt, but yet they're still sending me letters with all kinds of numbers on them.")).

Neeley has sufficiently alleged that he was injured when PRA sent him misleading letters in an attempt to collect a debt. Because the alleged injury is a defined and cognizable harm under the FDCPA, it is more than a bare procedural violation of the statute. Therefore, the court holds that Neeley has demonstrated a concrete injury in fact sufficient to confer Article III standing.

Next, PRA repackages its standing argument into one that challenges Neeley's ability to represent the putative class. It argues that a class representative must suffer the same particular injury as each class member. Whereas Neeley has not suffered any injury at all, he cannot be considered an adequate class representative. The court rejects this argument for the reasons discussed above.

■ Lastly, PRA asserts that Neeley has not shown that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). It claims that class treatment is inappropriate because the court must conduct individualized inquiries into whether each putative class member suffered a concrete and particularized harm under *Spokeo*. For example, some in the proposed class likely did not read the offending language. Others may have read the letters, but were not confused or mislead. This court recently rejected the same argument in *Smith v. GC Servs. Ltd. P'ship*, No. 1:16–cv–01897–RLY–DML, 2017 WL 3017272, at *2, 2017 U.S. Dist. LEXIS 110046, at *7 (S.D. Ind. July 17, 2017). Again, it is irrelevant under the objective unsophisticated consumer standard whether each class member was truly misled or deceived by PRA's letters. *See Lox*, 689 F.3d at 826.

In this case, predominance is a simple inquiry. Neeley's FDCPA claims are based on a form debt collection letter. This same letter was sent to all members of the putative class. Whether the letter violated the FDCPA is a common question of law. Accordingly, the predominance element is satisfied.

## IV. Conclusion

The court finds that the requirements for class certification under Rule 23 are met. Therefore, Neeley's Fifth Amended Motion for Class Certification (Filing No. 94) is **GRANTED**. The court hereby certifies the following class:

All persons similarly situated in the State of Indiana from whom Defendant attempted to collect a debt owed originally to Sears National Bank, by sending a form collection letter similar to the letters Defendant sent to Plaintiff, and as to which, according to Defendant's records, the letter was sent more than six years after the date of last payment, the date of charge off and the date of delinquency, from one year before the date of the Complaint to the present.

**SO ORDERED** this 2nd day of August 2017.