**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 10, 2021[*]
Decided June 23, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-2602

| | |
|---|---|
| ADAM CHRISTOPHER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 18-cv-944-bbc |
| LILY LIU, *Defendant-Appellee*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

Adam Christopher, a Wisconsin inmate, appeals the entry of summary judgment in favor of one of his treating physicians, Dr. Lily Liu. He maintains that Dr. Liu violated state and federal law during a five-month period by ordering diagnostic tests rather than changing his existing course of treatment. During the pretrial proceedings, the district court denied several of Christopher's motions—to amend his complaint, for

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

assistance recruiting counsel, and to compel the production of discovery material. He appeals those rulings as well. We affirm in all respects.

For more than a year before he first saw Dr. Liu, Christopher received treatment from other prison medical providers for gastrointestinal problems and back pain, but nothing resolved his symptoms. He first saw Dr. Liu in May 2018, a month after he received a wearable nerve stimulator (a "TENS unit") for his back pain and exercise instructions from a physical therapist. Dr. Liu initially focused on Christopher's gastrointestinal complaints, performing physical exams, ordering a full blood panel, and prescribing a stool softener—a treatment Christopher had tried before but did not like. When Christopher's blood panel appeared normal, Dr. Liu ordered further tests related to Christopher's gastrointestinal, back, and fatigue complaints: an abdominal x-ray and a CT scan. She also referred him to an orthopedist and to additional physical therapy. Before the end of 2018, Christopher had a colonoscopy and saw an outside back specialist. The colonoscopy results showed that Christopher had mild colon diverticulosis, for which the treatment was to continue increasing his fiber intake. The back specialist noted that Christopher's problems were chronic and could be addressed only with physical or chiropractic therapy.

In November 2018, Christopher sued Dr. Liu and 22 other prison employees. He moved the court to recruit counsel for him because his back condition made it "very difficult to draft pleadings," and the case would require medical expertise. The district court ordered Christopher to refile his complaint to include only factually related claims and determined that, until he did so, it would be too early to decide whether he needed assistance from counsel.

Christopher amended his complaint to include only claims about the medical treatment he received from three defendants. As to Dr. Liu, he claimed that between May and October 2018 she acted with deliberate indifference to his serious medical needs and violated state medical-negligence law by persisting in ineffective treatment for his gastrointestinal problems, failing to provide treatment for his back pain, and ignoring his complaints of fatigue.

After the defendants moved for summary judgment on their affirmative defense of failure to exhaust administrative remedies, the court denied Christopher's second motion to recruit counsel and fifth motion to amend his complaint (to add a new allegation that Dr. Liu's alleged failure to treat his medical conditions continued while the case was pending). The case did not appear too complex for Christopher to litigate on his own, the court concluded, because his "complaint and numerous other filings

[were] clear and easy to follow." And it was not yet apparent that the case would turn on questions of medical expertise. Further, although Christopher generally complained about obtaining discovery, the court could not conclude that a lawyer would help because he did not provide enough information about the evidence he sought. As for the motion for leave to amend, the court explained that "a complaint cannot be a moving target."

After her exhaustion defense failed, Dr. Liu moved for summary judgment on the merits. (By then, the other defendants had been dismissed; one on exhaustion grounds, and the other voluntarily by Christopher.) Christopher responded, but he asserted that he had not been able to perform sufficient discovery without assistance from a lawyer. He also filed two motions to compel specific discovery. The court reserved ruling on those requests until summary judgment briefing was complete.

Ultimately, the district court concluded that the undisputed facts did not support Christopher's claims against Dr. Liu, who had responded to Christopher's reported symptoms by ordering tests to determine appropriate treatment. With respect to Christopher's gastrointestinal problems, within five months Dr. Liu performed multiple physical examinations, prescribed medication, ordered lab work, an abdominal x-ray, and a CT scan, and referred Christopher for a colonoscopy. Christopher lacked evidence that this course of treatment fell outside the bounds of accepted medical judgment. And even taking as true Christopher's assertion that Dr. Liu refused to treat his back pain at his initial appointment, Christopher had recently received a TENS unit and exercise instructions for his back from his physical therapist. Dr. Liu did not have to consider alternatives before learning whether the new treatments helped. Further, Christopher failed to show that Dr. Liu's failure to prescribe a treatment specific to his fatigue was deliberately indifferent because the cause of that symptom was unknown, and she ordered multiple tests to determine the origins of his symptoms. Finally, the court concluded that no reasonable jury could find Dr. Liu liable for malpractice because Wisconsin law requires expert testimony to establish the standard of care, but Christopher submitted none. The district court denied the motions to compel, finding that the requested materials would not have changed its analysis.

A few days after entering the final judgment order, the district court docketed Christopher's third request for recruited counsel. In it, Christopher argued that without counsel he could not try to enlist an expert to prove that Dr. Liu's care departed from accepted professional judgment. The court did not address the motion.

More than 28 days after the judgment, Christopher filed what he labeled a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Treating the filing as a Rule 60(b) motion, the district court denied it. The court granted Christopher an extension of time to appeal, however, because he swore that COVID-19-related restrictions had impeded him from timely filing it. After ordering jurisdictional briefs from the parties, we determined that this appeal would include review of the district court's judgment and its order denying the post-judgment motion. But because Christopher's appellate briefs point to myriad perceived errors in the district court proceedings but do not address the post-judgment order, neither will we. *See Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 816 (7th Cir. 2019).

We begin with Christopher's challenge to the district court's denial of his motion for leave to amend his complaint for a fifth time, which sought to expand his claims against Dr. Liu to include her actions in 2019, after Christopher sued. We review denials of motions to amend a complaint under the deferential abuse of discretion standard. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 854 (7th Cir. 2017). "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to defendants, or where the amendment would be futile." *Id.* at 855 (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)).

Here, the district court justifiably denied Christopher's motion. First, the court found that Christopher's repeated amendments made his complaint "a moving target" for Dr. Liu. Moreover, he filed this request during summary judgment proceedings on exhaustion and just two months before the final dispositive-motions deadline. Granting leave to amend would have required modifying the court's scheduling order to allow for more discovery. Finally, many of the events Christopher complained of occurred before his earlier amendments, but he had not included them. The district court therefore did not abuse its discretion in limiting Christopher's claims to the five-month period in his earlier amended complaint. (For this reason, we do not address Christopher's arguments about Dr. Liu's alleged conduct in 2019. *See On-Site Screening, Inc. v. United States*, 687 F.3d 896, 900 (7th Cir. 2012).)

Next, Christopher raises several arguments challenging the entry of summary judgment for Dr. Liu on his claim of deliberate indifference. The parties agreed that Christopher's gastrointestinal problems, back problems, and fatigue were serious medical conditions that required treatment, and we will assume the same for purposes of this appeal. Thus, to survive summary judgment, Christopher needed to furnish

evidence that Dr Liu recklessly disregarded his need for treatment. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). We review de novo the district court's decision. *See Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018).

We agree with the district court that no reasonable juror could conclude that Dr. Liu displayed deliberate indifference to Christopher's need for treatment. Christopher's theory of the case is essentially that Dr. Liu should have changed his course of treatment—specifically, by prescribing some sort of new medication—upon his first visit with her because he told her that he still had symptoms. "Persisting in treatment known to be ineffective" can be evidence of deliberate indifference. *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021). But Christopher's expectation that Dr. Liu should have changed his course of treatment based on his word alone is not evidence that her decision was medically unsound. *See id*. ("It is not enough that the plaintiff simply believes the treatment was ineffective or disagrees with the doctor's chosen course of treatment.") Rather, Dr. Liu's decision to perform diagnostic tests—physical exams, blood work, an x-ray, a CT scan, and, eventually, a colonoscopy—before changing his course of treatment is owed deference because it was an exercise of her medical judgment. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)) (explaining that decisions about the need for diagnostic testing are "a classic example of a matter of medical judgment").

Further, there is no evidence in the record that any delay caused by the diagnostic testing unnecessarily prolonged suffering that an earlier, feasible action could have abated. *See Petties*, 836 F.3d at 730–31. While Christopher points to many perceived errors by Dr. Liu—that she wrongly noted his complaints and should have considered various treatments, including fatigue-specific ones—he does not point to any evidence that the continuation of his existing course of treatment during the relevant period caused him further harm. For example, he asserts that Dr. Liu should have ordered a colonoscopy earlier, but when he received a colonoscopy, the recommendation was merely that he continue supplementing his fiber intake, as Dr. Liu had ordered. And, though Christopher says that Dr. Liu's delay in developing a new treatment plan for his back pain prolonged his suffering, the back specialist that he eventually saw confirmed that the same treatment—physical therapy—was the best available. Christopher presses that Dr. Liu should have personally provided the treatment he ultimately received from specialists, but the Eighth Amendment does not give prisoners the right to demand specific medical treatment, let alone treatment by a specific provider. *See Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

For this same reason, the district court did not err in finding in Dr. Liu's favor on Christopher's state-law negligence claim. A claim of medical malpractice requires a negligent act or omission that caused an injury, i.e. greater harm than existed at the time. *See Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). No reasonable jury could conclude that Christopher established the element of injury.

Finally, because Christopher cannot show that granting his discovery motions or requests for recruited counsel would have changed the outcome of this case, we will not reverse based on the district court's decisions to deny those motions. *See Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *Pruitt v. Mote*, 503 F.3d 647, 649–50 (7th Cir. 2007) (en banc). Christopher requested from Dr. Liu admissions that her treatment had the *potential* to aggravate his blood pressure and that there were treatments available for his conditions that she did not prescribe. None of this would have tended to prove that Dr. Liu had the requisite state of mind or that she inflicted harm on Christopher by exacerbating his chronic conditions or needlessly prolonging pain. Nor could a lawyer have saved this case: The record contained Christopher's relevant medical records, and he presented cogent arguments opposing summary judgment. A lawyer might have been able to enlist a medical expert, but we have explained why Christopher's evidence would have fallen short anyway.

We have considered Christopher's other arguments, and none has merit.

AFFIRMED