In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-1346

LEVI A. LORD,

*Plaintiff-Appellant,*

*v.*

JOSEPH BEAHM, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-cv-00351 — **J. P. Stadtmueller**, *Judge*.

_____

SUBMITTED JANUARY 21, 2020[*] — DECIDED MARCH 13, 2020

_____

Before EASTERBROOK, BRENNAN, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Levi Lord, an inmate in the Waupun Correctional Institution in Wisconsin, exposed himself to

---

[*] We have agreed to decide this case without oral argument, because oral argument would not significantly aid the court, and the briefs and record contain everything necessary for our decision. FED. R. APP. P. 34(a)(2)(C).

a female guard. After the guard told him that she would write him up and walked away, Lord began yelling that he had a razor blade and intended to kill himself. A short while later, a male guard went to Lord's cell, ordered him out, and saw he had minor scratches treatable with a gauze bandage. Lord nonetheless invoked 42 U.S.C. § 1983 and sued four guards for money damages, alleging that they acted with deliberate indifference to a material risk to his life by not responding faster to his suicide threat. The district court rejected the claim and entered summary judgment for the defendants.

Prison suicide is very real and very serious, but any fair reading of this record, even in the light most favorable to Lord, shows that he leveled an insincere threat of suicide to get attention and demonstrated no recoverable injury. Other fact patterns may yield different outcomes, but here the resolution is clear. We affirm, as Lord (thankfully) did not hurt himself and that reality leaves nothing for a jury to decide.

**I**

The summary judgment record supplies the operative facts, which we review in the light most favorable to Lord. See *Lewis v. McClean*, 864 F.3d 556, 564 (7th Cir. 2017). Summary judgment is warranted if the defendants, as the moving party, show that there remains "no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). The law considers a dispute genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "As to materiality, the substantive law will identify which facts are material." *Id.*

A

On December 10, 2017, Correctional Officer Lisa Stoffel was escorting an inmate to the shower when she heard someone call her name. She turned around and saw Lord staring at her from inside his cell while masturbating. Stoffel told Lord he would receive a conduct report and walked away.

Lord then began shouting that he had a razor blade and was going to kill himself. Two inmates submitted declarations confirming that they heard Lord's threat. For their part, however, three correctional officers (defendants Stoffel, Christopher O'Neal, and Joseph Beahm) denied hearing Lord threaten suicide. Officer Christopher Pass provided a different account, acknowledging that at some point he heard Lord say he would kill himself if he was not able to talk to Officer Stoffel. Pass told Lord that his sexual misconduct eliminated any chance of Stoffel returning to his cell.

About thirty minutes later, Officer O'Neal saw what appeared to be two blood droplets on Lord's cell door window. O'Neal asked Lord what he was doing. Lord responded by displaying a razor blade and saying he was trying to kill himself. After securing the blade, O'Neil unlocked the door, removed Lord, and walked him to a separate cell. Medical personnel arrived and applied a gauze bandage to the few minor scratches they saw on Lord's forearm. While no further medical treatment was necessary, Lord remained under observation.

B

Lord sued each of the four correctional officers who he believed heard but failed to respond to his suicide threat. Alleging a violation of the Eighth Amendment's prohibition on

cruel and unusual punishment, Lord contended that the officers acted with deliberate indifference to a serious medical need by not responding faster to stop him from attempting suicide.

Following discovery, the district court entered summary judgment for the defendants. The court viewed the record evidence as disproving that Lord presented any objectively serious medical need, the threshold element of a deliberate indifference claim. From there the court emphasized that Lord self-inflicted only minor scratches, requiring "but a brief cleaning and a single application of gauze." Nor, the court continued, could any reasonable jury conclude that Lord was "genuinely suicidal, rather than childishly seeking secondary gain, namely more direct contact with [Officer] Stoffel."

## II

### A

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an entitlement to damages for such a violation, the prisoner must provide evidence that he presented an objectively serious medical need that a defendant correctional officer responded to with deliberate indifference, thereby resulting in some injury. See *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc).

All agree that suicide is an objectively serious medical condition. Our case law makes equally clear that prison officials cannot intentionally disregard a known risk that an inmate is suicidal. See *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019) (collecting cases). We have likewise emphasized that

policymakers responsible for prison operations must take diligent precautions to respond to and mitigate a meaningful risk of inmate suicide. See *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 926–29 (7th Cir. 2004).

This case is different, as it reflects an inmate's insincere suicide threat to get attention. Lord was upset that Officer Stoffel would not return to his cell, and he reacted by screaming that he had a blade and was taking his life, only then to inflict minor scratches. Lord did not focus his § 1983 claim on these scratches or, for that matter, on any other physical injury. To the contrary, he focused exclusively on *risk*—on the danger he presented to himself by having a razor blade and the officers then ignoring his unmistakable plea that he intended to kill himself.

Lord is right in one respect. The district court may have been too quick to conclude that the facts did not allow a jury to find that any of the defendant officers heard but failed to respond promptly to his suicide threat. Remember that two of Lord's fellow inmates confirmed hearing the threat, and that evidence shows a factual disagreement. This observation extends no further, however. To survive summary judgment, Lord needed to show that the differing accounts of what happened (and did not happen) left unresolved a *genuine* dispute over a *material* fact essential to the resolution of liability under § 1983. And that is where Lord's claim fell short.

Lord's claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury. See *Wilson v. Garcia*, 471 U.S. 261, 278 (1985) (recognizing that § 1983 confers "a general remedy for injuries to personal rights"); *Gabb v. Wexford*

*Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)) ("In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'"); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("Section 1983 is a tort [and] [a] tort to be actionable requires injury.").

Unlike the district court, we do not wade into Lord's credibility because, even viewing the evidence as he urges, he did not show that he experienced any cognizable harm. Lord's physical injuries consisted only of minor scratches, quickly and easily treated with a gauze bandage. By any measure, the injuries were trivial—indeed, almost nonexistent—and Lord supplied no evidence that he suffered any other form of injury (for example, psychological harm) from his insincere suicide threat. Lord's summary judgment papers show that he wanted to recover money damages solely for the risk to his life—a serious medical need—the defendant officers ignored by not immediately responding to his suicide threat. That risk is not compensable without evidence of injury, however. Put most simply, the summary judgment record revealed and left nothing for Lord to present to a jury at trial.

### B

Today's case presents a clear instance of an insincere suicide threat from an inmate wanting nothing more than attention. But tomorrow's case may entail a fact pattern nowhere near as straightforward. That reality is not hypothetical, for inmate suicide on the rise in our nation's prisons. See E. ANN CARSON, U.S. DEPARTMENT OF JUSTICE, BUREAU OF JUSTICE STATISTICS, MORTALITY IN STATE AND FEDERAL PRISONS, 2001-2016 — STATISTICAL TABLES 5 (2020) (providing statistics on

the number of deaths by suicide in state and federal prisons and reporting that suicides reached a 15-year high in 2016). It suffices to remind that the Eighth Amendment prohibits prison officials from imposing wanton or unnecessary pain by ignoring an inmate who, whether because of major mental illness or some other serious medical need, goes beyond voicing an idle threat of suicide. Levi Lord fell on the opposite end of the spectrum, and so we AFFIRM.