<div style="border:1px solid">

**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

</div>

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 28, 2021[*]
Decided May 11, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1655

| | |
|---|---|
| JOSEPH G. REDMAN, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 18-cv-3288-EIL |
| CHAD DOWNS, et al., *Defendants-Appellees.* | Eric I. Long, *Magistrate Judge.* |

**O R D E R**

After spending six days under suicide watch in the county jail, Joseph Redman, a pretrial detainee, hanged himself in the shower. Officers were able to revive him but did not get him medical attention for days. Redman sued the county sheriff and members of the jail staff, asserting that they violated his Fourteenth Amendment rights by denying him adequate health care and inhumanely isolating him without clothing and hygiene products. *See* 42 U.S.C. § 1983. At screening, the district court dismissed

---

[*]We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Redman's claims based on his conditions of confinement, and later it entered summary judgment for the defendants on Redman's claim for inadequate medical care. But the court applied the incorrect standard when screening Redman's conditions-of-confinement claim, and a reasonable jury could find that three officers who discovered Redman unconscious in the shower responded unreasonably to his suicide attempt. We therefore vacate the judgment and remand for further proceedings on those claims. Otherwise, we affirm.

To the extent they concern claims dismissed at screening, we take the allegations in Redman's complaint as true, *see Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020), and we present the summary-judgment record in the light most favorable to Redman, *see LaBrec v. Walker*, 948 F.3d 836, 839 (7th Cir. 2020). Redman arrived at the Adams County Jail in Quincy, Illinois, on August 8, 2018. He told jail staff at his intake assessment that he was suicidal, he had attempted to kill himself the night before, and he wanted to see a doctor. Staff placed him on suicide watch in a segregated wing, gave him a mat and a blanket, and allowed him to wear only a "suicide smock" (designed so that the stiff fabric cannot be used for self-harm). He was not given soap, a toothbrush and toothpaste, or any other hygiene items. Eventually, another detainee on suicide watch was placed in Redman's cell.

Six days later, on August 14, Redman had not yet seen any medical provider. But Officer Nick Elbus opened the door to his cell and allowed him and his cellmate to walk down the hall and take a shower. Redman's cellmate went first. When it was Redman's turn, he entered the shower unattended, took a plastic trash bag from the wall, tied it into a noose, and hanged himself from a shower rod. Elbus found Redman and radioed for help; officers Dakota Downs and Deana Coleman responded. According to Elbus's incident report, he and Dakota Downs were able to get Redman to "wake up and respond" with chest compressions and ammonia tablets (smelling salts). The three officers then put Redman in a restraint chair in the jail's intake area with his smock on his lap and the ammonia tablets still in his nose as he faded in and out of consciousness. Dakota Downs joked that Redman could be "charged with chipping the paint" with his head. After a few hours, the officers returned Redman to his cell without his smock. For the next 10 days, he was naked, even when he went for meals, and although at least one officer, Blake Harper, told him to put something on, he was not given a new smock. He did not ask for one.

Redman did not see a medical professional until August 24—10 days after the suicide attempt. At that point, a family-medicine nurse practitioner from a local medical

group gave him a short examination; it is not clear whether this was a response to the suicide attempt or something more routine. She noted that Redman appeared depressed. Three weeks later, on September 17, Redman saw a psychiatrist who diagnosed him with bipolar disorder and prescribed medication. There is no evidence that any defendant brought about the psychiatrist's visit. A month later, Redman was removed from suicide watch at his request by Chad Downs, a jail administrator. The jail continued to give Redman his medications and allow him to see the psychiatrist until he was transferred in March 2019.

Redman sued Elbus, Coleman, Harper, Dakota Downs, and Chad Downs, as well as the county sheriff, Brian Vonderhaar, and two other officers—Brinton Finley and Scott Smith—under 42 U.S.C. § 1983. At "merit review," *see* 28 U.S.C. § 1915A(a), a district judge dismissed Redman's claims about his lack of clothing and hygiene products, concluding that he had not alleged a "sufficiently serious deprivation" or that jail officials were "deliberately indifferent to a serious risk of harm."

The parties later filed cross-motions for summary judgment on Redman's medical-care claim, and the district court (Magistrate Judge Long, presiding by consent under 28 U.S.C. § 636(c)) entered judgment for the defendants. It concluded that, even if they knew Redman was suicidal, jail staff acted reasonably by placing Redman on suicide watch, eventually providing him with mental-health care, and giving him his prescribed medication after that. Further, the court explained, no evidence showed that they prevented him from getting necessary care; they all "did what they could."

On appeal, Redman continues to press his conditions-of-confinement claims relating to the deprivation of basic hygiene products and, later, clothing. We agree that the district court erred by dismissing them at screening under a deliberate-indifference standard. To state a claim under the Fourteenth Amendment, a pretrial detainee must allege only that the defendants purposefully, knowingly, or recklessly created conditions that were objectively unreasonable. *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

Redman did so. Jails must provide detainees with "basic human needs," including clothing and hygiene products. *Hardeman*, 933 F.3d at 825 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). Here, Redman alleged that he was not provided with soap, a toothbrush, and toothpaste for at least 51 days. Further, he allegedly lacked something to cover himself (even a suicide smock) for at

least 10 days after his suicide attempt and had to walk the halls naked, past jail staff, to get his meals. Although Officers Finley and Harper taunted him as he did so, they never gave him another smock and neither did any other officer. Finally, Redman alleged that the deprivations of clothing and hygiene products were demeaning and humiliating. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 855–58 (7th Cir. 2017*)* (detainees stated cognizable harm under the Fourteenth Amendment by alleging that being denied underwear was "humiliating"). We note that "officials must be free to take appropriate action to ensure the safety of inmates." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). But that potential explanation for the deprivation did not provide a basis to dismiss Redman's claim at the pleadings stage. Further, it does not follow from the need to keep hygiene items out of the cell to prevent self-harm—*if* that is why Redman did not have soap or dental hygiene products—that a detainee may be altogether deprived of opportunities to wash himself or brush his teeth.

Redman also challenges the district court's summary-judgment ruling, maintaining that the defendants knew that he was suicidal yet failed to get him timely treatment. He further contends that the district court overlooked that the defendants left him unsupervised in the shower with the means to harm himself and failed to timely arrange medical care even after his suicide attempt.

The Fourteenth Amendment also applies to claims of inadequate medical care brought by pretrial detainees. *See James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020). For his claim to survive summary judgment, Redman again needed evidence that jail staff acted purposefully, knowingly, or recklessly when considering their response to his serious medical condition, *Miranda*, 900 F.3d at 353–54, and that their conduct was objectively unreasonable considering the relevant facts and circumstances. *James*, 959 F.3d at 318. Mental-health disorders resulting in suicidal ideation are serious medical conditions. *See Miranda*, 900 F.3d at 349; *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020). But even when jail staff respond unreasonably to such a condition, a detainee must prove that their conduct caused harm. *See Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020); *Lord*, 952 F.3d at 905 (risk from suicidality "not compensable without evidence of injury").

The district court rightly determined that no reasonable jury could find that Harper, Smith, Vonderhaar, or Chad Downs did, or failed to do, anything objectively unreasonable with respect to Redman's serious medical condition. There is no evidence of the sheriff's involvement, nor that the other three officers participated in delaying

medical or mental health care. So no jury could find them liable under § 1983. *See Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017); *Miranda*, 900 F.3d at 343–44.

But summary judgment was premature with respect to Elbus, Coleman, and Dakota Downs because a finding of objectively unreasonable conduct was not foreclosed on this record. At summary judgment, Redmond argued that it was "inhumane" for Elbus to leave him "unguarded in an insecure area with means to make an attempt on his life" and for all three officers to return him to his cell without any mental health care that night or for weeks after. Further, he contended, his mental health deteriorated because of his suicide attempt and after it, and so his condition would not have progressed had the officers protected him from self-harm and promptly gotten him treatment. This court has repeatedly acknowledged that jail officials may violate the Fourteenth Amendment by failing to protect inmates from genuine threats of self-harm, *see Miranda*, 900 F.3d at 349, and by significantly and inexplicably delaying effective medical treatment for a serious condition where it exacerbates a detainee's suffering, *see Grieveson v. Anderson*, 538 F.3d 763, 779–80 (7th Cir. 2008) (jury could find that one-and-a-half-day delay in treatment for serious condition without explanation violated Fourteenth Amendment). The sparse declarations of the defendants in support of summary judgment did not support a conclusion that they are not liable for failing to prevent Redman's suicide attempt and the subsequent delay in treatment. Because the record is thin, however, we say nothing more than summary judgment was premature on the issue of whether any defendant's conduct was objectively unreasonable. The district court should consider this question—and the related issue of whether any defendant's conduct caused harm to Redman—in the first instance. *See Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1005 (7th Cir. 2019).

We end with a note about discovery on remand. Because neither the district court's opinion nor the defendants' summary-judgment and appellate filings addressed Redman's attempted suicide, the jail officials' response to it, or any harm Redman suffered as a result, we question whether discovery on the issue was adequate. As discovery will likely be reopened to address Redman's conditions-of-confinement claim, the district court may consider whether, in its discretion, further discovery could also be appropriate on Redman's claims for inadequate medical treatment against Elbus, Coleman, and Dakota Downs. *See Lewis v. McLean*, 864 F.3d 556, 565 (7th Cir. 2017) (noting that district court could consider reopening discovery on remand following reversal of decision granting summary judgment); *Peate v. McCann*, 294 F.3d 879, 885 (7th Cir. 2002) (same).

We therefore VACATE the district court's dismissal of Redman's conditions-of-confinement claim, VACATE its entry of summary judgment in part with respect to the Fourteenth Amendment claims against Elbus, Coleman, and Dakota Downs, and REMAND for further proceedings consistent with this decision.