**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 26, 2021[*]
Decided July 27, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3004

| | |
|---|---|
| DEQUARIUS D. FITZPATRICK, *Plaintiff-Appellant*, | Appeals from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 19-C-1024 |
| CHAD NYS, Sergeant, *Defendant-Appellee.* | William C. Griesbach, *Judge.* |

**O R D E R**

Dequarius Fitzpatrick, an inmate imprisoned at Green Bay Correctional Institution, was forcibly removed from his cell and put on suicide watch after he sliced himself with a razor. Later, he sued a prison sergeant for responding with deliberate indifference to his earlier warnings of suicidal thoughts. *See* 42 U.S.C. § 1983. The district court entered summary judgment against him. On appeal, Fitzpatrick challenges that decision and two discovery rulings. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

The events are disputed; we present the version that favors Fitzpatrick, the party against whom judgment was entered. *Thomas v. Martija*, 991 F.3d 763, 767 (7th Cir. 2021). Fitzpatrick suffers from depression and has a history of self-harm. Late one night, he told Bradley Wenzlaff, a prison guard, that he felt suicidal and asked to be placed on mental-health observation. Wenzlaff left to go find the sergeant on duty, Chad Nys.

Chaos broke out before Wenzlaff could return with Nys, however. Water began gushing out of a number of cells on Fitzpatrick's tier, and Fitzpatrick's fellow inmates started shouting about toilets overflowing. At the same time, one inmate threatened to hang himself with a bedsheet. While guards cleared water from the tier, Nys rushed to deal with that inmate. Meanwhile, Fitzpatrick and his cellmate also began shouting and barricaded themselves in their cell.

The parties dispute what else happened during these events. Fitzpatrick says he told Nys in two separate encounters that he felt suicidal. In the first, shortly after the flooding began, Nys asked Fitzpatrick to calm down because he was trying to get the water cleaned up. The second encounter took place after Fitzpatrick and his cellmate barricaded themselves in their cell. Fitzpatrick showed Nys a razor, upon which Nys told Fitzpatrick that he was not suicidal and that, in any event, there were no observation cells available. (Inmates in this unit evidently were permitted to possess razors.) As Nys walked away, Fitzpatrick says, he shouted at Nys that he could not be left unattended. Nys, for his part, has attested that neither interaction occurred.

Soon after, Fitzpatrick slashed his arm with the razor on the inside of his elbow, reopening a wound he had previously inflicted. He proceeded to paint the walls with his blood. His cellmate shouted for help, and a guard who had been mopping water in front of the cell radioed Nys for assistance.

Nys rushed to Fitzpatrick's cell and ordered Fitzpatrick to stop harming himself. When Fitzpatrick continued to splatter blood over the walls and muttered about killing himself, Nys incapacitated him with pepper spray. A team of guards then forcibly removed Fitzpatrick from his cell and took him to the restricted housing unit.

In that unit, a nurse saw dried blood on Fitzpatrick's forearm and a trail of blood that he had left behind. Fitzpatrick initially refused to let her examine him and stood mute in an observation cell, covering his wound. Later, he showed the nurse his cut, and she documented a "1-2 cm" laceration that was not actively bleeding but required follow-up. Fitzpatrick accepted a band-aid to cover it. When psychiatric staff examined

him, he denied further intentions to self-harm. A psychologist continued to treat him for depression, and he has since harmed himself and experienced suicidal thoughts.

Two years after the incident, Fitzpatrick sued Nys for not immediately granting his request to be placed on observation status.

Discovery was contentious. Fitzpatrick, who had received incident reports suggesting that his injury was photographed and the cell extraction taped, sought to obtain visual evidence of the incident. Prison officials responded that only two videos remained and neither documented the cell extraction. Fitzpatrick then moved to compel the production of the materials he had requested and asked for spoliation sanctions. *See* FED. R. CIV. P. 37(e). The district court denied the motion. The court could not compel the production of materials that did not exist, it reasoned, and Fitzpatrick had no evidence rebutting attestations by an inmate-complaint examiner that those materials were inadvertently destroyed before he initiated his lawsuit.

After Nys moved for summary judgment, Fitzpatrick sought a default judgment against him as a sanction for destroying evidence and perjuring himself—Nys committed perjury, Fitzpatrick urged, by making statements in his declaration that were inconsistent with an incident report submitted by Wenzlaff. Nys saw no inconsistencies between the two documents and stood by his attestations. The court denied the motion. Questions remained over whether Nys's account was accurate, the court observed, but that was not enough to support a finding of perjury or require a default judgment.

Later, Fitzpatrick cross-moved for summary judgment, and the district court entered judgment for Nys. The court concluded that Fitzpatrick sustained nothing but superficial cuts and scratches in the aftermath of the incident, so he had not established that he faced any objectively serious medical condition. Further, no reasonable jury could conclude that Nys responded unreasonably to Fitzpatrick's suicide threat under the circumstances—flooding on the tier and a suicide attempt by another prisoner.

On appeal, Fitzpatrick begins by challenging the two discovery rulings. First, he maintains that the court should have sanctioned Nys for failing to produce the videos and photos he requested. Reports from other guards establish that such evidence existed, he argues, and the materials would have documented Nys's indifference to his condition and the severity of his injuries. The videos, he believes, contained audio of Nys stating "I didn't think you were serious" after Fitzpatrick slashed himself. And the photos would have depicted blood pooled on his cell floor and splattered on the walls.

The district court permissibly denied the request for sanctions. A spoliation sanction is proper only when a party has a duty to preserve evidence because he knew, or should have known, that litigation was imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). A showing of bad faith is also necessary. FED. R. CIV. P. 37(e); *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013). Here, Fitzpatrick had no evidence suggesting that Nys destroyed evidence to hide illicit conduct. And he was unable to refute an inmate-complaint examiner's attestations that no photos remained and the videos had been inadvertently written over in the two years preceding the suit.

Second, Fitzpatrick challenges the denial of his request for a default judgment based on Nys's perjury. The alleged perjury concerns the factual dispute over whether Nys visited Fitzpatrick's cell before Fitzpatrick slashed himself. As evidence of perjury, Fitzpatrick points to apparent inconsistencies between Nys's declaration and Wenzlaff's statement in his incident report that he "notified Sgt. Nys of [an incident involving Fitzpatrick] and relieved him … so he could go speak to … Fitzpatrick." Fitzpatrick regards these discrepancies as conclusive proof that Nys lied when he attested that he appeared at Fitzpatrick's cell only once, after Fitzpatrick already had cut himself.

Here too the court appropriately exercised its discretion to deny the motion. Perjury is the "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008) (citation omitted). As the district court observed, questions remain over whether Nys's declaration provides an accurate account of events. But it is unclear whether Wenzlaff's report and Nys's declaration conflict, much less whether the apparent inconsistencies result from faulty memory or willful falsehood. A factfinder would not be required to accept Fitzpatrick's version of what happened.

We turn now to the merits. To reach a jury on his claim of deliberate indifference, Fitzpatrick had to present evidence of "an objectively serious medical need that a defendant correctional officer responded to with deliberate indifference, thereby resulting in some injury." *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020); *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). The risk of suicide is an objectively serious medical condition, and it is well established that prisoners have the right to be free from deliberate indifference to such a risk while in custody. *Lord*, 952 F.3d at 904; *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019) (collecting cases).

Fitzpatrick first challenges the district court's determination that he failed to present evidence of an objectively serious medical condition. He argues that he would

have produced more evidence of the severity of his injury had Nys turned over the requested photographs and video footage. Moreover, he contends, the only reason he was not injured more seriously was that guards intervened as quickly as they did.

But even if we accept that Fitzpatrick was at serious risk of suicide and his injuries were worse than the district court believed, no jury could conclude that Nys recklessly ignored his condition. On Fitzpatrick's version of events, Nys raced to his cell three times after being alerted of Fitzpatrick's crisis, despite facing two simultaneous emergencies—flooding at the unit and a suicide threat by another inmate. Though Nys did not accede to Fitzpatrick's request to be taken immediately to observation, Nys did not leave Fitzpatrick unattended: Guards were mopping water in front of Fitzpatrick's cell. And Fitzpatrick does not dispute that Nys rushed to his aid and prevented further self-harm after learning that he had cut himself.

Fitzpatrick insists that a factual dispute remains over when Nys first learned that he was suicidal, permitting an inference that Nys recklessly ignored his condition. Fitzpatrick maintains that Nys must have known that he faced a substantial risk of harm as soon as he brandished the razor with which he intended to kill himself. And, he says, videos of the cell extraction would have revealed an oral admission by Nys that he did not heed Fitzpatrick's warning of suicidal thoughts.

But we agree with the district court that this evidence does not create a material dispute over whether Nys was indifferent to his plight. To defeat summary judgment, Fitzpatrick needed evidence that Nys *knew* he was at substantial risk of taking his life and intentionally disregarded the risk. *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). Fitzpatrick acknowledges that Nys intervened immediately upon learning that he had harmed himself. And he has no evidence that Nys knew of his unstable mental-health history or realized the gravity of his threats amid the chaotic circumstances on the prison floor. Further, as Fitzpatrick tells it, Nys did not believe that his warnings were sincere. Given the steps Nys took upon learning that Fitzpatrick had cut himself, the district court correctly determined that Nys's actions—even under Fitzpatrick's version of the events—do not reflect "something approaching a total unconcern" for his welfare. *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (internal citations omitted) (officers' failure to prevent detainee from attempting suicide in the backseat of car on way to involuntary commitment did not permit inference of deliberate indifference in light of subsequent attempts to get him aid).

AFFIRMED