NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 20, 2021[*]
Decided October 20, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-3194

| | |
|---|---|
| DOUGLAS A. REAVES, <br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:18-cv-00084-JPH-MJD |
| BARBARA RIGGS, et al., <br> *Defendants-Appellees*. | James Patrick Hanlon, <br> *Judge*. |

**O R D E R**

Douglas Reaves, an Indiana inmate, sued two nurses who aided his recovery from foot surgery, alleging that they deliberately ignored his medical needs in violation

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

of his Eighth Amendment rights. *See* 42 U.S.C. § 1983. The district court entered summary judgment for both nurses. Because Reaves has provided no evidence that would allow a reasonable jury to conclude that either nurse deliberately disregarded his post-operative needs, we affirm the judgment.

We recount the evidence in the light most favorable to Reaves. *See Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (en banc). After receiving surgery on his left foot at a hospital in June 2017, Reaves met the first nurse, Donna Archer, in the outpatient-surgery department of the hospital. Reaves had received a spinal block, which is a method of anesthesia that temporarily disabled his legs. After the surgery, correctional officers told Archer that they wanted to return Reaves quickly to his prison, the Wabash Valley Correctional Facility. Over the next hour and a half, Archer assessed Reaves's health several times before discharging him. He met all of the discharge criteria except for one that applied to the spinal block, requiring that he urinate before leaving the hospital to ensure that the spinal block's effects had subsided. But he urinated within four hours of his discharge, as expected. Also, in discharging Reaves, Archer gave him a protective shoe that the surgeon advised "may be removed whenever not weightbearing." Archer did not put it on Reaves before he left the hospital because she expected that, as normally happens, he would be seated in a wheelchair for the return trip to Wabash.

Reaves encountered the second nurse, Barbara Riggs, when he returned to the prison. Correctional officers made him stand during the trip, so when he arrived at the prison his bandages were soaked with blood. A nurse reinforced the bandages, but Reaves continued bleeding and his bandages were soaked again when he first saw Riggs later that morning. The surgeon had ordered that the bandages stay "clean, dry and intact." Reaves asked Riggs not to change them without calling the surgeon, but she applied new bandages without making that call. Two weeks later, Reaves asked Riggs to extend his medical convalescence—permission to remain in bed—and the prison's doctor granted the request two days later. About a week later, Reaves reported that his foot was red, swollen, and secreting pus. Riggs saw him that afternoon, and with the prison's doctor approval, he received an antibiotic. As his recovery progressed, Reaves received supplies to change bandages himself, as well as crutches and medicine. The prison's doctor and the surgeon found Reaves's healing to be acceptable, and six weeks after the surgery, the surgeon discharged Reaves from post-operative care.

Reaves responded with this suit. He argued that Archer violated his rights under the Eighth Amendment by releasing him from the hospital before the effects of the

spinal block had worn off and by failing to place the protective shoe on his foot. As for Riggs, he contended that she violated his Eighth Amendment rights in several ways: she changed his blood-soaked bandages without calling the surgeon, she did not ask the medical staff to change his bandages daily, and she did not extend his convalescence order or examine his swollen foot immediately upon his request. The district court entered summary judgment for both nurses. The court reasoned that Reaves had not presented evidence suggesting that Archer ignored any risk of serious harm concerning the timing of his discharge or the protective shoe. As for Riggs, the court explained that Reaves had not presented evidence that her treatment either recklessly departed from professional norms or harmed him.

On appeal, Reaves challenges the entry of summary judgment. To survive summary judgment, Reaves had to present evidence sufficient for a jury to conclude that (1) he had an objectively serious medical condition, and (2) the defendants knew of and deliberately disregarded a substantial risk of harm from it. *Petties*, 836 F.3d at 728. We assume that he has met the first prong and focus on the second.

Reaves raises two claims about Archer. The first is that she seriously imperiled his health by releasing him from the hospital before the spinal block wore off, in breach of hospital policy and bowing to pressure from correctional officers. Archer is a medical professional, so we defer to her decision to release Reaves unless it was "blatantly inappropriate." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005). No reasonable jury could so characterize Archer's decision. Even if the correctional officers urged Archer to release Reaves early, she did not. She waited over an hour and half after they sought his release, evaluated him several times, and found that he met all discharge criteria except the hospital's policy (about spinal blocks) that he urinate before discharge. But a policy violation is not in itself sufficient to support an Eighth Amendment claim. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). More fundamentally, Reaves has not shown "evidence of a recoverable injury" from his release before urination. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). To the contrary, he urinated normally within the expected timeframe and suffered no post-discharge problems from the spinal block. On these facts, then, a jury could not find an Eighth Amendment violation.

Reaves next argues that, because he had to stand during his trip back to Wabash, Archer jeopardized his health when she failed to put the protective shoe on his foot at discharge. For Reaves to prevail, he had to submit evidence suggesting that Archer knew that Reaves faced a risk of serious harm without the shoe on his foot. *See LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020). But no evidence refutes Archer's understanding

that Reaves would sit in a wheelchair when transported to the prison and, as the surgeon wrote, that the shoe "may be removed whenever not weightbearing."

Reaves also raises three challenges to the entry of summary judgment against Riggs, but none persuades us. First, he argues that the surgeon's instruction to keep the bandages "intact" suggests that Riggs recklessly changed them upon his return to the prison when they were soaked with blood. Although ignoring a specialist's instructions can violate a prisoner's rights under the Eighth Amendment, *Petties*, 836 F.3d at 729, Riggs did not ignore the surgeon's instructions. The surgeon ordered that she keep the bandages "clean, dry and intact." Because by Reaves's own account they were soaked with blood when he saw Riggs, she reasonably followed the order by changing them.

Regarding the day that Reaves complained that his foot was red, swollen, and secreting pus, he argues that Riggs deliberately disregarded that complaint until the afternoon. Delayed treatment by medical staff may violate an inmate's Eighth Amendment rights only if the staff recklessly "exacerbated the injury or unnecessarily prolonged" pain. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). But Reaves has not furnished evidence that, when Riggs learned about his swollen foot, he told her that he was in severe pain, or that she knew that a delay until the afternoon might worsen the condition. Without evidence suggesting that Riggs knew that serious harm might flow from this modest delay, the claim fails. *See Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).

Finally, Reaves contends that Riggs deliberately ignored his health needs by not arranging for staff to change his bandages daily and by not resolving more quickly his request to extend his convalescence. But again, Reaves had not met his burden to furnish evidence of an injury. He received adequate supplies to change his bandages himself, and he does not contend that he was unable to do so. Similarly, two days after he requested the extended convalescence, the prison's doctor granted it, and Reaves does not identify any injury that arose from the two-day lapse. Reaves replies only that his recovery time for this surgery was longer than for his prior foot surgery. But no evidence connects any difference in recovery times to the absence of staff-administered bandage changes or uninterrupted in-bed convalescence. *See Keri*, 458 F.3d at 651. Rather, both the prison's doctor and his surgeon assessed Reaves's six-week healing time as normal. Consequently, this suit properly ended at summary judgment.

AFFIRMED