**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 25, 2021[*]
Decided October 26, 2021

*Before*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-2705

| | |
|---|---|
| MAURICE A. JACKSON,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 17-CV-1362 |
| LEONTA JACKSON, Warden, *et al*.<br>    *Defendants-Appellees*. | Jonathan E. Hawley,<br>*Magistrate Judge*. |

**O R D E R**

Maurice Jackson, an Illinois inmate, asserts that prison officials violated his Eighth Amendment rights when they denied his request for placement in protective

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

custody to guard against inmate gang violence and sexual abuse from correctional officers. The district court granted the defendants' motion for summary judgment, concluding that no reasonable juror could find that the defendants acted with deliberate indifference. We affirm.

The proceedings in this case have been complex and protracted, and we limit our description of the facts to those most relevant for purposes of this appeal—the events that affected Jackson while he was housed at Pontiac Correctional Center in the summer of 2017. That summer, Jackson asserts, the defendants (various officials within the Illinois Department of Corrections) violated the Eighth Amendment when they denied his request to extend his time in protective custody. He maintained that he needed protective custody for two reasons: his fear that prison gangs had put out a "hit" on his life, and his fear that he would be sexually assaulted and harassed by prison staff.

Jackson, who had come to Pontiac in 2015, sought protective custody in May 2017. His fear of harm from gangs arose from word he recently had received from a fellow inmate, a Vice Lords member, that he had been targeted for attack by three gangs, including the Vice Lords. Jackson thought that this information explained some of the fights that prisoners had started with him recently. He assumes that the hit traced back to an accusation he made several years earlier that a Vice Lords member sexually assaulted him.

Jackson's other fear stemmed from a string of sexual abuses perpetrated, he says, by several correctional officers. He asserted that from January 2017 through April 2017, officers threatened to rape him, grabbed him on the buttocks, and told him that he had a "fat ass." Jackson recounted one incident when an officer grabbed his buttocks and genitals during a pat down in the protective-custody processing gallery. Jackson also recalled later instances in which officers smacked his buttocks or made threatening comments of a sexual nature to him. In addition to his request for protective custody, Jackson filed internal grievances over this harassment as well as complaints under the Prison Rape Elimination Act. 34 U.S.C. § 30307.

After Jackson made his request for protective custody, he was sent directly to temporary protective custody pending a decision on his placement. Jackson spoke first with a correctional counselor and described his fear of the gang hit. Jackson's case was referred to Denver Hedrick, a correctional officer who worked in the prison's intelligence unit responsible for gang-related matters. Jackson told Hedrick about the gang hit, identified the Vice Lords inmate who could corroborate his allegations, and reiterated his fear of sexual assault and harassment by prison staff. Hedrick did not recommend Jackson for protective custody because he could not substantiate that

Jackson's safety was in danger. Pontiac officials (all named as defendants) then signed off on the denial.

The Administrative Review Board denied Jackson's appeal. The Board concluded that he had not provided sufficient verifiable information to support his reports of sexual assault or an alleged gang hit. Jackson was removed from temporary protective custody.

Jackson then sent a letter to the district court about his "imminent danger situation," asking whether he could bring a suit under 42 U.S.C. § 1983 over "ongoing" sexual assault, sexual harassment, and failure to protect. The court construed the letter as a request for a preliminary injunction for protection from sexual assault and, after holding several hearings, directed that a new case be opened. Soon thereafter, Jackson was transferred to Stateville Correctional Center—a transfer that, the court determined, mooted his claims for injunctive relief. Jackson later amended his complaint to assert that the defendants violated his Eighth Amendment rights when they refused to keep him in protective custody.

Early in the proceedings, the district court granted the defendants' partial motion for summary judgment on grounds that Jackson had not exhausted administrative remedies with respect to his sexual assault and harassment claims. (Jackson does not contest this decision on appeal, so we say nothing further about it.)

Further proceedings ensued, and the court ultimately granted the defendants' motion for summary judgment on the remaining failure-to-protect claims. To the extent that Jackson's claims depended upon the alleged gang hit, the court determined that he could not establish an Eighth Amendment claim because the hit never materialized. And given the unverified nature of his claims, the court added, no reasonable jury could find that any defendants had malicious intent in denying him protective custody or knowledge that he was in danger of being physically assaulted by an inmate or sexually assaulted by prison staff.

On appeal, Jackson first challenges the district court's determination that he lacked evidence from which a jury could find that the defendants acted with deliberate indifference in failing to protect him from the threatened gang hit. He argues, for instance, that two defendants—Hedrick and Ann Lahr (Chairperson of the Administrative Review Board)—could have tried to interview the Vice Lords gang member about the gang hit.

The district court appropriately entered summary judgment because, even viewing the evidence as he proposes, he did not show that he experienced any cognizable harm. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (upholding summary judgment for defendants where injuries of prisoner threatening suicide consisted "only of minor scratches"). Jackson was never attacked after he was denied protective custody, and he supplied no evidence that he suffered any psychological harm as a result of being denied protective custody. *Id.*

Jackson also challenges the determination that the evidence was insufficient for a jury to find deliberate indifference from the defendants' failure to protect him from sexual harassment or assault perpetrated by prison staff. He maintains, for instance, that he can prove that defendants were aware of his prior complaints that prison staff had sexually assaulted or harassed him. But prison officials are not expected to believe everything that a prisoner tells them. *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014). And even if the defendants were aware of such complaints, the record does not permit an inference that any defendant drew the inference that Jackson faced a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Davis v. Kayira*, 938 F.3d 910, 915 (7th Cir. 2019).

AFFIRMED