NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 22, 2021[*]
Decided December 22, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 20-3489

| | |
|---|---|
| JUSTIN LEE DOUGLAS, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-C-1879 |
| SAMANTHA SCHWARTZ-OSCAR, et al., *Defendants-Appellees.* | Lynn Adelman, *Judge.* |

**O R D E R**

Justin Lee Douglas, a Wisconsin prisoner, appeals the entry of summary judgment against him in this suit asserting that medical and prison officials were deliberately indifferent to his threats of self-harm. Because no reasonable jury could

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

find that Douglas suffered serious injury or that the defendants disregarded his risk of suicide, we affirm.

For the first half of 2017, Douglas was incarcerated at Green Bay Correctional Institute. He had been placed in its restrictive housing unit for clinical observation. Diagnosed with an antisocial personality disorder, he has a history of suicidal ideation and self-harming behavior, which included inserting objects into his penis and making—or threatening to make—small cuts on his arm.

At the prison, Douglas demanded frequent contact with his psychologist Samantha Schwartz-Oscar and threatened self-harm when he could not see her. In January and February, he threatened self-harm five times while she was the on-call crisis counselor. Schwartz-Oscar responded each time with cell-side safety checks. In March, Douglas wrote Schwartz-Oscar threatening to harm himself and court staff at an upcoming court hearing. Schwartz-Oscar reported the threat to court staff, and Douglas was issued a conduct report.

Douglas's threats escalated when other psychologists responded to his threats instead of Schwartz-Oscar. In early April, he wrote a letter to Schwartz-Oscar threatening suicide. Another psychologist, Amy Zirbel, conducted the cell-side safety check, and Douglas denied suicidal ideation and said that the letter was an "experiment" to see who read his mail. A week later, guards found a note in his cell threatening suicide. Psychologist Jennifer Harris-Forbes conducted the cell-side safety check, and Douglas told her he had no intent to harm himself. On another occasion, guards restrained Douglas after he threatened to jump off the sink in his cell unless Schwartz-Oscar saw him. Zirbel met with Douglas after the incident, and he told her that he was feeling "vindictive," not suicidal.

On April 20, when Douglas learned that he had been reassigned to a male psychologist, he told Harris-Forbes he had cut his arm with his fingernail. In response, she placed him on monitored status. The next day, at his first meeting with the new psychologist, Douglas threatened to "batter" him. He then filed grievances against Schwartz-Oscar, Harris-Forbes, and Zirbel for ignoring his suicidal thoughts.

On April 22, after he was taken off monitored status, Douglas again cut his arm with his fingernail. Jay Van Lanen was the guard on duty, and he reported the incident to Zirbel, that day's on-call crisis counselor. Zirbel determined that Douglas did not pose an imminent danger to himself and did not need to return to monitored status.

That night, Douglas threw urine at guards. He told Van Lanen that he had hidden sharp objects in his cell and that he had inserted a metal object into his penis. Van Lanen and other guards responded by strip-searching Douglas and inspecting his cell. They found nothing on his person but recovered pen caps and pieces of metal from an air vent in his cell. A nurse treated Douglas's cut on his arm with a band-aid and antibiotic cream. Van Lanen then moved Douglas to another cell, and Zirbel placed him on monitored status. Activity logs show that guards checked on him every half hour of the day for two weeks, until he was transferred to another prison. Douglas then filed grievances against Van Lanen and Zirbel for not placing him on monitored status as soon as he disclosed that he had cut himself on April 22. He also filed two more grievance against Schwartz-Oscar for not seeing him.

Several months after his transfer, Douglas sued two dozen members of Green Bay's staff for Eighth Amendment violations. The district court entered partial summary judgment for 20 of the defendants against whom Douglas had not exhausted administrative remedies, *see* 42 U.S.C. § 1997e(a), but permitted Douglas to proceed on his deliberate indifference claims against Schwartz-Oscar, Harris-Forbes, Zirbel, and Van Lanen. According to Douglas, Van Lanen delayed reporting his injuries on April 22, and the three staff psychologists failed to respond to his threats of self-harm throughout April, resulting in physical injury and increasing his risk of suicide.

The district court granted the remaining four defendants' motion for summary judgment. The court found, first, that Douglas had failed to present any evidence of a recoverable injury. According to the court, the cuts were "trivial" and "superficial," never required more than "ointment and a band-aid," and did not equate to a cognizable harm under *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). The court went on to find that even if Douglas had suffered a cognizable injury, he failed to present evidence that the defendants were deliberately indifferent to the risk of harm he posed to himself. The court noted that during his five months in restrictive housing, Douglas was seen by psychological services staff 86 times, and the defendants pursued a "nuanced" strategy of navigating his threats and taunts with necessary measures (ranging from close observation to bed restraints) to keep him safe through the least restrictive means possible. And there was no evidence, the court added, that these treatment decisions departed substantially from accepted professional judgment.

On appeal, Douglas argues that the district court glossed over a disputed material fact—the severity of his injury—by minimizing his cuts as superficial. But he points to nothing in the record to suggest that he suffered injuries that were more

severe. Our review of the record reflects that his physical injuries consisted of minor cuts and scratches treatable with band-aids and cream. On the record before it, the district court properly entered summary judgment because "minor scratches" are not cognizable harms under the Eighth Amendment. *Lord*, 952 F.3d at 905.

Douglas also argues generally that the three psychologists ignored his risk of suicide by not ordering him restrained in response to each of his threats of self-harm. But the court appropriately rejected this argument, emphasizing that the psychologists responded repeatedly to his range of needs with a nuanced approach of measured steps—regular therapy, crisis counseling, cell-searches, and at times bed restraints. As the court also observed, Douglas provided no evidence that this approach was so inadequate that it demonstrated an absence of professional judgment. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021). Given the record here, no reasonable jury could find that the defendants ignored an "imminent risk of death by suicide," *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021), failed to investigate Douglas's threats of self-harm, *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014), or harmed his health through their responses (or lack thereof). *See Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019) (psychological); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1034 (7th Cir. 2019) (physical).

AFFIRMED