NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 20, 2022[*]
Decided July 20, 2022

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-1718

| | |
|---|---|
| TROY G. HAMMER,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 19-C-444 |
| SAMANTHA SCHWARTZ-OSCAR, et al.,<br>    *Defendants-Appellees*. | William C. Griesbach,<br>*Judge*. |

**O R D E R**

When Troy Hammer, who was an inmate at Wisconsin's Green Bay Correctional Institute, expressed suicidal thoughts, he was strip-searched and placed on observation, though he still managed to cut himself. Later, he sued several correctional officers and medical providers for failing to protect him from a known and serious risk of self-harm, in violation of the Eighth Amendment. The district court entered summary judgment

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

for the defendants. Because the record shows that the defendants reacted with prompt and reasonable measures, not deliberate indifference, we affirm.

We recount the facts established at summary judgment in the light most favorable to Hammer. *See Lisle v. Welborn*, 933 F.3d 705, 710 (7th Cir. 2019). One evening, Hammer told Lieutenant Daniel Cushing, a supervisory correctional officer, that he wanted to die and needed restraints to prevent his suicide. Hammer had a history of threatening and attempting self-harm, and so Cushing called Samantha Schwartz-Oscar, the prison's psychologist, who had Cushing place Hammer on "close" observation. Accordingly, Cushing had officers strip-search Hammer, place him in an observation cell, and check on him every 15 minutes. Schwartz-Oscar did not think a more restrictive approach—such as placing Hammer in restraints or constantly monitoring him—was necessary at the time, given that Hammer had recently done well on close observation, he seemed cooperative despite his suicidal thoughts, and he had not injured himself seriously in any prior self-harm incident—though he had, in the past, sneaked razors past strip searches.

An hour later, Hammer made two 4-centimeter cuts on one of his wrists using a small razor he had concealed during the strip search. One correctional officer, Michael Dedering, checked on Hammer around this time. He attested that he did not see Hammer in the act of cutting himself, though Hammer suspects otherwise. Another officer checked on Hammer shortly after, saw him cutting at his wrists, and immediately brought him to the health unit where a nurse dressed his cuts. There, Hammer warned that he would cut his neck if not restrained. Cushing reported the incident to Schwartz-Oscar, who put Hammer on constant observation.

Back in the same observation cell, Hammer again cut himself, this time making a 7-centimeter laceration on his neck. Because Hammer was under constant observation, an officer witnessed the incident, restrained Hammer, and took him to the health unit, where his cuts were treated, and it was determined that he needed to go to an outside hospital for further evaluation. Cushing escorted Hammer to the hospital. He also reported the incident to Schwartz-Oscar, who instructed Cushing to put Hammer in restraints when he returned from the hospital. Cushing did so.

Hammer later sued Schwartz-Oscar, Cushing, Dedering, the prison nurse, and several other correctional officers for failing to prevent him from harming himself in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983. He also asserted that

Schwartz-Oscar and the nurse committed medical malpractice under state law by failing to restrain him after he first expressed suicidal thoughts.

The eight defendants moved for summary judgment, and the court granted their motion. No reasonable jury could conclude Schwartz-Oscar reacted indifferently to Hammer's risk of self-harm, the court ruled, because she put him on close, then constant, observation, and finally in restraints. Nor was Cushing indifferent, the court added, given that he reported Hammer's conduct to Schwartz-Oscar and carried out her commands. As for the other officers and the nurse, the court explained that because they observed Hammer, escorted him to the health unit as needed, and treated his wounds, no jury could find them deliberately indifferent to Hammer's needs. Finally, the court dismissed the state-law claim because the defendants were not covered by Wisconsin's malpractice statute and were not properly sued for negligence.

On appeal,[1] Hammer contests the conclusion that the evidence required judgment for the defendants. He contends that his Eighth Amendment claim against Schwartz-Oscar and Cushing must survive because they displayed deliberate indifference by not restraining him immediately after his credible threat of self-harm. He also argues that summary judgment for Dedering is precluded by the evidence that the guard shrugged his shoulders and walked away when he saw that Hammer was cutting himself.

To get past summary judgment on a deliberate-indifference claim, Hammer had to furnish evidence from which a reasonable jury could find that the defendants knowingly and unreasonably failed to respond to a serious risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994); *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020). Genuine suicidal ideation is an objectively serious medical condition, and prisoners have a right to be free from deliberate indifference to the associated risk of serious harm. *Lord*, 952 F.3d at 904; *Lisle*, 933 F.3d at 716 (collecting cases).

Judgment for Schwartz-Oscar and Cushing was proper, despite Hammer's contention that they each knew about his history of concealing razors and therefore knew he needed to be placed in restraints once he threatened self-harm. First, there is no evidence that Schwartz-Oscar disregarded a substantial risk of harm. The record shows that at each juncture, Schwartz-Oscar applied professional judgment and made individualized decisions to protect Hammer. *See Petties v. Carter*, 836 F.3d 722, 729

---

[1] We construe Hammer's late-filed reply brief as a motion to file it instanter, grant the motion, and consider the reply brief in resolving this appeal.

(7th Cir. 2016) (en banc) (to show deliberate indifference, the decision must reveal "an absence of professional judgment"). When Hammer first expressed suicidal threats, she ordered close observation, which required that he be strip-searched, deprived of objects that could be used for self-harm, and put into a safer cell. This was a permissible response to the circumstances at the time, including Hammer's cooperative demeanor, his lack (to Schwartz-Oscar's knowledge) of objects for self-harm, and the previous efficacy of close observation. When Hammer later acted on his warnings of self-harm, Schwartz-Oscar evolved her response by ordering constant observation and, later, restraints. Hammer contends that Schwartz-Oscar should have ordered restraints earlier, but inmates are not entitled to demand a particular response to risk, so long as the defendant does not act with deliberate indifference. *See Arnett v. Webster*, 658 F.3d 742, 758 (7th Cir. 2011). And Hammer furnished no evidence that the decision to put him on observation rather than in restraints was not based on Schwartz-Oscar's professional judgment. *Id.* at 758–59.

Second, as to Cushing, who reported Hammer's conduct to Schwartz-Oscar and carried out her recommendations, there is no evidence of a culpable state of mind. At each stage—when he learned that Hammer was feeling suicidal, when Hammer cut his wrists, and when Hammer cut his neck—Cushing promptly called Schwartz-Oscar for advice about how best to respond. He carried out Schwartz-Oscar's instructions and, as result, each time Hammer attempted to self-harm, an officer was nearby and intervened to save his life. True, Hammer asked Cushing for restraints, but Cushing was permitted to rely on Schwartz-Oscar's advice about psychological matters, including how to respond to a patient's suicidal threats. *See Arnett*, 658 F.3d at 755.

Summary judgment for the remaining defendants was also sound. Regarding Michael Dedering, Hammer lacked evidence this officer saw Hammer cutting himself and walked away. Though Hammer attested that Dedering did so, Hammer cannot swear to what another person saw, and his suspicion by itself is not evidence that raises a dispute when Dedering testified that he did not see Hammer cutting himself. *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1034 (7th Cir. 2019). As for the other defendants, Hammer raises no argument on appeal specific to them, and so he has waived any challenge. *See Wonsey v. City of Chicago*, 940 F.3d 394, 398–99 (7th Cir. 2019).

Lastly, Hammer appeals the summary judgment on his state-law claims, but neither Schwartz-Oscar nor the health-unit nurse can be sued under Wisconsin's medical-malpractice statute because neither is a "physician" or "nurse anesthetist." *See* WISC. STAT. §§ 655.001, 655.002. And to the extent Hammer sought to sue these

defendants for negligence, that claim fails because Hammer never served the state attorney general with notice of the claim, as is required. *See id.* § 893.82(5m).

AFFIRMED